Richard M. Steingard (SBN 106374)
RSteingard@SteingardLaw.com
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Attorney for Defendant
Decker Hayes Ramsay

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DECKER HAYES RAMSAY, <br><br> Defendant. | CASE NO. CR 20-471-JAK <br><br> **DEFENDANT DECKER RAMSAY'S SENTENCING MEMORANDUM AND EXHIBITS** <br><br> Date: February 25, 2021 <br> Time: 8:30 a.m. |

Defendant Decker Ramsay, by and through his attorney of record, Richard M. Steingard, hereby submits this sentencing memorandum and supporting exhibits to assist the Court in fashioning an appropriate sentence that is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

DATED:  February 12, 2021         Respectfully submitted,

                                  LAW OFFICES OF RICHARD M. STEINGARD


                                  _____/s/_____
                                  RICHARD M. STEINGARD
                                  Attorney for Defendant
                                  DECKER HAYES RAMSAY

i

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendant Decker Ramsay pled guilty to a one-count Information charging him with making a false statement under oath, in violation of 18 U.S.C. § 1001. Mr. Ramsay's offense was falsely denying on a job-related security clearance form that he had been a member of an organization that threatened the civil rights of others, when in fact he had been a member of such groups when he was in college. Mr. Ramsay admitted his misconduct at the earliest opportunities—to the agents who interviewed him, to the government seeking a pre-indictment disposition, and to the Court in his guilty plea.

Mr. Ramsay now appears before the Court for sentencing. The parties are largely in agreement on recommending a sentence for Mr. Ramsay. Based on the Presentence Investigative Report ("PSR"), the Probation Office's Sentencing Recommendation Letter, and counsel's conversation with the government, the parties and Probation Office jointly recommend that the Court impose a two-year period of probation without a prison commitment. The Probation Department recommends a fine of $9,500; because of Mr. Ramsay's limited resources, the government and defense jointly ask that the Court impose 100 community service hours in lieu of the proposed fine. In addition, the government has advised that it may recommend a two-month period of home confinement; the Probation Department does not make such a recommendation and the defense opposes this request. All agree that a special assessment of $100 should be imposed, as well as the probationary terms and conditions outlined in the PSR.

In support of these sentencing positions, Mr. Ramsay submits this sentencing memorandum. As set forth below, we first correct certain errors in the Probation Office's submissions and address the applicable sentencing guidelines. We then supplement the PSR's personal history section by providing additional

information about Mr. Ramsay's background and character. We attach letters from Mr. Ramsay (Exhibit A) and his parents, Kimberly and Scott Ramsay (Exhibits B and C, respectively) in which they address Mr. Ramsay's upbringing—including his prior affiliation with white supremacist groups—and the severe, lifelong punishment already imposed for his commission of his offense.

## II.
## CORRECTIONS TO THE PSR AND PROBATION OFFICE'S SENTENCING RECOMMENDATIO LETTER

Mr. Ramsay notes the following factual corrections to the PSR and the Probation Officer's Sentencing Recommendation Letter, dated January 11, 2021:

1. PSR, Page 1: The PSR incorrectly states the names of, and contact information for, Mr. Ramsay's counsel. The correct information is:

   > Richard Steingard
   > 800 Wilshire Boulevard, Suite No. 1050
   > Los Angeles, California 90017
   > (213) 260-9449
   > RSteingard@SteingardLaw.com

2. PSR, Page 6, ¶ 17: The PSR incorrectly states that the statutory maximum sentence for a violation of 18 U.S.C. § 1001 is 10 years. As noted earlier in the PSR, the statutory maximum for this offense is 5 years.

3. Probation's Sentencing Recommendation Letter, Page 4: Under the heading "Respect for the Law/Adequate Deterrence/Protect the Public," the Probation Officer's Letter states, "In aggravation, Ramsay *is* a member of both…" (Emphasis added.) This is incorrect; Mr. Ramsay has not been affiliated with these groups for several years. We ask that the sentence be stricken or, alternatively, be changed to state, "In aggravation, Ramsay *was* a member of both…" (Emphasis added.)

## III.
## SENTENCING GUIDELINES CALCULATIONS

Mr. Ramsay agrees with the PSR that the applicable sentencing guidelines are as follows:

        Base Offense Level……………….6
        Acceptance of Responsibility…….-2
        Total Offense Level……………….4
        Criminal History Category……..…I
        Sentencing Range……………0-6 months

## IV.
## SECTION 3553(a) FACTORS

The Probation Officer's Sentencing Recommendation Letter correctly states that under 18 U.S.C. § 3553(a), the Court shall consider several factors in deciding upon a sentence which is "sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection." (Recommendation Letter at 3.) Aside from the corrections noted above, the PSR and Recommendation Letter correctly address and examine the 3553(a) factors. We submit the following information to supplement one such factor: the nature and circumstances of the offense and history and characteristics of the defendant. (18 U.S.C. § 3553(a)(1)).

In letters to the Court, Mr. Ramsay's parents provide insightful information about their son's past. Mr. Ramsay's mother, Kimberly Ramsay, recalls that when Decker was younger, "he volunteered weekly at the San Pedro Boys & Girls Club tutoring students. For almost his entire time in high school he volunteered at Toberman Neighborhood Center in San Pedro where he brought in large boxes of LEGO toys sharing his love of LEGO's with boys and girls that might not ever have an opportunity to use these types of tools to express their creativity. In both of these cases the children were primarily students of color… As a senior in high

school he was a volunteer teacher's assistant to an African American who has been to our home for visits and social gatherings because we all adore him." Mrs. Ramsay makes these statements to emphasize that "[m]y son does not have hate in his heart." (Letter of Kimberly Ramsay, attached as Exhibit B.)

Mrs. Ramsay's letter also discusses Decker's hard work at USC, where he graduated from college. She writes, "He graduated with an electrical engineering degree with a good GPA. He worked hard to earn and keep a scholarship that paid for 80% of his tuition and he still paid 50% of his college costs without taking any loans. How did he do this? He worked every summer, full-time and saved all of his earnings. He had 5 engineering internships prior to graduating and received multiple job offers." (*Id.*)

In light of his Decker's volunteerism and focus on schoolwork, Mrs. Ramsay ponders why her son became affiliated with white supremacist organizations while he was in college. She states, "While I don't know exactly what attracted Decker to the group of people he was involved with as a teenager, I sometimes wonder if it is similar to what attracts some young people to gangs. In those cases they often seek the protection and the support of the group. Our current culture is constantly saying that white males are bad, perhaps when culture is telling you via social media, 'art', TV ads, etc. that there is something inherently bad about you, perhaps this is what leads some to seek the comfort of a group that supports them. I do not know, I'm only speculating. What I do know for certain is that Decker did not advocate nor commit violence. He was a teenager who was seeking conversation and support." (*Id.*)

Decker's father echoes many of these sentiments, emphasizing that he raised his son to be tolerant and respectful. He states, "From a very early age [Decker] expressed interest in all types of societal and cultural forming systems; political, religious, and governmental. We indulged opportunities to help him expand his knowledge and indulge his curiosity. I was raised to respect all members of

4

society regardless of national origin, race, sexual orientation, or religion. I fully expected him to adopt a similar tolerant attitude from me as I did from my parents. I've worked in support of marginalized groups from childhood to present day. Learning of the accusation against my son was surprising and emotionally crushing. I feel that I have failed in my primary duty to raise him and I will feel guilt for my failing for the remainder of my life." (Letter of Scott Ramsay, attached as Exhibit C.)

Both parents reflect on the punishment that has already been inflicted due to the instant prosecution. Mrs. Ramsay states, "He has paid a high price already, and now that he has been convicted of a felony he will pay a price for the rest of his life. It will be difficult for him to find work, find relationships, secure places to live etc. but he knows that his entire family (including grandparents and Uncle) stand behind him and will be there to support him along the way." (Exh. B.) Scott Ramsay agrees, noting, "When considering his punishment, please realize that Decker has already received a life sentence of sorts. I'm referring to the US Attorney's Office press release dated October 14, 2020 [announcing the Information and plea agreement][1], that was widely disseminated by local and national broadcast and print media. Although Decker had years earlier severed ties with both groups named in the press release, his name will forever be tied to them. And worse still, to the inflammatory term; 'white supremacy'. While he has rejected that cultural abomination, his brief involvement will be just a few keystrokes away on the internet forever. Please know that I love and support

---

[1]   *See* https://www.justice.gov/usao-cdca/pr/south-bay-man-agrees-plead-guilty-lying-about-membership-white-supremacist-groups. Based on the government's press release, numerous media outlets reported the story: a Google search of Mr. Ramsay's name shows that the first 15 entries are about his case, including articles from the Associated Press, NBC, *U.S. News and World Report, The Washington Times, The Daily Breeze,* and KTLA News, along with photographs showing swastikas and Nazi salutes.

5

Decker completely and will do everything in my power to ensure that he is a productive and beneficial member of society." (Exh. C.)

Decker Ramsay has also written the Court, expressing sincere remorse for his actions, and then reflecting on what led him to appear before the Court. He states, "I would like to begin by reaffirming my earlier admission of guilt and furthermore, acknowledging that my actions were both morally and legally wrong. Nearly three years ago, while completing the SF-86 form from my college dorm, I failed to realize how serious lying on a federal form was and disregarded the form's admonishments about doing so. I had been a member of—and voluntarily left—both Vanguard America and Aryan Underground, which I failed to disclose on the SF-86 form. I realize how inappropriate my callous attitude was and am paying dearly for my mistake." (Letter of Decker Ramsay, attached as Exhibit A.)

Continuing, Mr. Ramsay addresses what led him to these intolerant groups. "As a teenager, I was extremely frustrated with the political situation in America, while also having witnessed several violent assaults against close friends of mine and having been a victim of them myself from gang members. At the time, I saw these conflicts as a racial issue, which steered me to a series of intolerant and insensitive racial beliefs. I joined one organization, then another, but left them years ago and am no longer a part of them. Over the past few months, I have watched growing political violence in America, whether they were at the US Capitol in Washington D.C., or here in Southern California. I know violence is not the way forward for any political movement, and how foolish I was all those years ago to believe otherwise." (*Id*.)

Mr. Ramsay concludes his letter by noting that, as a result of his misconduct, he resigned his engineering position in the defense industry and wonders what the future holds for him:

The impact of my conduct has already been severe. Immediately prior to being charged in this case, I had been working in an engineering position in the defense industry and had received exclusively positive performance reviews. Knowing I would be pleading guilty, I resigned my position. I know I will not have the opportunity to work in the defense arena for the rest of my life. I thought this would be my career and profession—now I have to rethink everything about my future.

Once this case is resolved, I plan on reentering the workforce as soon as possible. I hope to find employment in Southern California as an engineer, though I am uncertain if that is even possible in light of my felony conviction. (*Id*.)

These letters provide additional insights into Mr. Ramsay's background and character. They reveal a young man from a good family who made a serious mistake and is already being punished for it. Mr. Ramsay's misconduct permanently changed the trajectory of his life—a permanent felony conviction, publicity about his actions, loss of his job, and an uncertain future. These collateral consequences all serve as another form of punishment.

Based on the foregoing, and that contained in the Probation Office's submissions, we respectfully request that the Court impose a sentence of probation for two years, 100 hours of community service, a $100 special assessment and the terms and conditions outlined in the Probation Office's Sentencing Recommendation Letter.

DATED: February 12, 2021          Respectfully submitted,

                                  LAW OFFICES OF RICHARD M. STEINGARD


                                  _____/s/_____
                                  RICHARD M. STEINGARD
                                  Attorney for Defendant
                                  DECKER HAYES RAMSAY

# Exhibit A

Your Honor,

I am writing this letter to you to provide some insight into my personal life, and how I have grown and developed as an individual since the offense in question occurred. I would like to begin by reaffirming my earlier admission of guilt and furthermore, acknowledging that my actions were both morally and legally wrong. Nearly three years ago, while completing the SF-86 form from my college dorm, I failed to realize how serious lying on a federal form was and disregarded the form's admonishments about doing so. I had been a member of—and voluntarily left—both Vanguard America and Aryan Underground, which I failed to disclose on the SF-86 form. I realize how inappropriate my callous attitude was and am paying dearly for my mistake.

As a teenager, I was extremely frustrated with the political situation in America, while also having witnessed several violent assaults against friends and having been a victim of them myself from gang members. At the time, I saw these conflicts as a racial issue, which steered me to a series of intolerant and insensitive racial beliefs. I joined one organization, then another, but left them years ago and am no longer a part of them.

Over the past few months, I have watched growing political violence in America, whether they were at the US Capitol in Washington D.C., or here in Southern California. I know violence is not the way forward for any political movement, and how foolish I was all those years ago to believe otherwise.

The impact of my conduct has already been severe. Immediately prior to being charged in this case, I had been working in an engineering position in the defense industry and had received exclusively positive performance reviews. Knowing I would be pleading guilty, I resigned my position. I know I will not have the opportunity to work in the defense arena for the rest of my life. I thought this would be my career and profession—now I have to rethink everything about my future.

Once this case is resolved, I plan on reentering the workforce as soon as possible. I hope to find employment in Southern California as an engineer, though I am uncertain if that is even possible in light of my felony conviction.

Again, I apologize for my misconduct. Thank you for your consideration.

Sincerely,

[signature]

# Exhibit B

February 5, 2021

Dear Judge,

I am Decker Ramsay's Mother and I thank you for taking the time to read my thoughts on his case from my perspective.  A little background on our family; my husband and I both come from working class families.  I was the first in my family to attend college; my husband has just a high school degree.  Growing up in an apartment with no yard to play in, it was important to my husband to provide a "home" for his kids in a nice and safe neighborhood with good public schools.  Throughout the lives of our children (ages 23, 19) we have worked extremely hard to make this happen.  It was not easy.  For years I worked full-time + 2 part-time jobs and my husband being self-employed worked on average 60 – 70 hours per week.  We sacrificed vacations and other types of extras.  At the time, it was what we thought was best but in hindsight, if I could do it over, I would have done it differently as I feel my children were deprived of the kind of family time that *most* families enjoy.

My relationship with my son has always been strong and in spite of this situation remains so.  Following in the footsteps of his parents, Decker worked extremely hard and sacrificed a lot to get to where he was at 23.  He graduated with an electrical engineering degree with a good GPA.  He worked hard to earn and keep a scholarship that paid for 80% of his tuition and he still paid 50% of his college costs without taking any loans.  How did he do this?  He worked every summer, full-time and saved all of his earnings.  He had 5 engineering internships prior to graduating and received multiple job offers.  He did not <u>need</u> to "lie" on an application to get a job, he had offers from private non-defense companies.

When Decker was younger he volunteered weekly at the San Pedro Boys & Girls Club tutoring students.  For almost his entire time in high school he volunteered at Toberman Neighborhood Center in San Pedro where he brought in large boxes of LEGO toys sharing his love of LEGO's with boys and girls that might not ever have an opportunity to use these types of tools to express their creativity.  In both of these cases the children were primarily students of color.  My son does not have hate in his heart.  As a senior in high school he was a volunteer teacher's assistant to an African American who has been to our home for visits and social gatherings because we all adore him.  We have always tried to follow Martin Luther King's statement "judge not on the color of one's skin but of the content of one's character".  I know that is something that people say "look, we have black friends", that is not the point I am attempting to make here.  I'm only trying to share for context.

While I don't know exactly what attracted Decker to the group of people he was involved with as a teenager, I sometimes wonder if it is similar to what attracts some young people to gangs.  In those cases they often seek the protection and the support of the group.  Our current culture is constantly saying that white males are bad, perhaps when culture is telling you via social media, "art", TV ads, etc. that there is something inherently bad about you, perhaps this is what leads some to seek the comfort of a group that supports them.  I do not know, I'm only speculating.  What I do know for certain is that Decker did not advocate nor commit violence.  He was a teenager who was seeking conversation and support.

He has paid a high price already, and now that he has been convicted of a felony he will pay a price for the rest of his life. It will be difficult for him to find work, find relationships, secure places to live etc. but he knows that his entire family (including grandparents and Uncle) stand behind him and will be there to support him along the way.

Kimberly Ramsay

*Kimberly Ramsay*

# Exhibit C

February 7, 2021

Dear Judge,

I am Scott Ramsay, Decker Ramsay is my eldest son. Kimberly Ramsay, my spouse of 25+ years, and I have raised him in a loving and nurturing household since birth. He lives with us now and for the foreseeable future.

Decker has always been a very inquisitive person. From a very early age he expressed interest in all types of societal and cultural forming systems; political, religious and governmental. We indulged opportunities to help him expand his knowledge and indulge his curiosity. I was raised to respect all members of society regardless of national origin, race, sexual orientation or religion. I fully expected Decker to adopt a similar tolerant attitude from me as I did from my parents. I've worked in support of marginalized groups from childhood to present day. Learning of the accusation against my son was surprising and emotionally crushing. I felt that I had failed in my duty to raise him properly.

The behavior he has pleaded guilty to is a short-lived aberration and inconsistent with everything we taught him. I am convinced that his behavior will not be repeated as he has matured greatly since his teen years. It is worth noting that years earlier he broke all contact with the individuals in the groups named in the complaint. He had moved on to an entirely new social circle, graduated from college and embarked on a challenging career path. Of his own volition, he had accomplished everything that the state could possibly desire of a young man.

I can declare with absolute certainty that he will not repeat any aspect of his prior behavior. Decker has the complete support of his immediate and extended family.

When considering his punishment, please realize that Decker has already received a life sentence of sorts. I'm referring to the US Attorney's Office press release dated October 14, 2020 that was widely disseminated by local and national media. Although Decker had years earlier severed ties with the individuals in both groups detailed in the press release, his name will forever be linked to them. And worse still, to an inflammatory idea that he had already rejected; "white supremacy". His brief involvement with misguided individuals will be just a few keystrokes away on the internet forever.

Please know that I love and support Decker completely and will do everything in my power to ensure that he is a productive and beneficial member of society.

Thank you for your consideration.

Sincerely,

Scott Ramsay